NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000454
29-MAY-2019
09:19 AM

NO. CAAP-15-0000454

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JUSTIN A. LAMBERT, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVSION
(1DTA-14-05039)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Defendant-Appellant Justin A. Lambert (Lambert) appeals from the District Court of the First Circuit, Honolulu Division's (District Court)[1] May 15, 2015 Entry of Judgment and/or Order and Plea/Judgment (Judgment).  After a bench trial, the District Court convicted Lambert of Count 1, Operating a Vehicle Under the Influence of an Intoxicant (OVUII), Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and/or (b)(1) (2007 and Supp. 2018); and Count 2, Refusal to Submit to Testing, HRS § 291E-68 (Supp. 2014).

On appeal, Lambert contends that the District Court erred by denying a multitude of pre-trial motions and, at the hearing on a motion to suppress evidence, by admitting testimony refreshed from a writing without the proper foundation first being laid.

---

[1]     The Honorable David W. Lo presided.

## I. BACKGROUND

At approximately 3:35 a.m. on October 26, 2014, a Honolulu police officer pulled Lambert over after observing his vehicle traveling the wrong way on a one-way street. Upon noticing a strong odor of alcohol, observing that Lambert's eyes were red, glassy, and bloodshot, and that Lambert was slurring his speech, the officer told Lambert that he would be subjected to a Standard Field Sobriety Test (SFST). Upon exiting the vehicle, Lambert's movements were slow and hesitant, and he was holding on to the vehicle to sustain his balance. Meanwhile, a second officer arrived, who conducted three SFSTs on Lambert, all of which Lambert failed. Lambert was arrested without being read his Miranda rights. At the police station, Lambert refused to submit to a breath or blood test to determine his blood-alcohol level. He was charged with OVUII and refusal to submit to testing.

At a hearing on Lambert's eleven pre-trial motions, the District Court denied three motions relating to the statutory definition of "alcohol" on the basis of Turping,[2] denied one motion to waive costs of inspecting documents in the prosecution's possession because "this court has consistently denied" such motions, denied four motions relating to discovery without explanation, and without ruling on one of the motions. Following the testimony of the two officers, the District Court denied the final two motions to suppress after finding "an abundance of evidence to establish there was reasonable suspicion and a basis for probable cause". Over Lambert's objection, the District Court commenced the trial that same day. Lambert did not testify.

---

[2]     State v. Turping, 136 Hawai'i 333, 361 P.3d 1236 (App. 2015).

## II. POINTS OF ERROR

Lambert asserts the District Court erred when it:[3]

A.   "denied Lambert's motion to suppress his refusal based on violations of [Miranda,[4]] his right to an attorney[,] and his statutory right to counsel under HRS [§] 803-9[,] as well as having to make a Hobson's choice."

B.   "deprived [Lambert] of his right to transcripts of pretrial motions and conducted the pretrial motions on the same day as trial."

C.   "denied [Lambert's] motion to dismiss for failure to provide notice that fermented alcohol is included in the charge of OVUII even though it is not in the definition of alcohol under HRS [§] 291E-1."

D.   "found no [Brady[5]] violation had occurred when the prosecution imposed an unconstitutional condition when it demanded a fee to allow defendant to inspect discovery."

E.   "denied Lambert's motion to compel general discovery materials without having to pay an unauthorized cost for the discovery."

F.   "denied Lambert's motion to compel [Henthorn[6]] and [Giglio[7]] material regarding the officers."

G.   "denied Lambert's motion to compel SFST training materials for the officers." [and]

H.   "allowed officer Cullen to testify after improper refreshing of his memory."

---

[3]   Lambert's opening brief does not comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) in that the points on appeal section contains no citations to the record specifying where the alleged errors occurred or where they were objected to, nor does it comply with HRAP Rule 28(4)(b) subsections (A) or (C), where applicable. Contemporaneous with this memorandum opinion, Lambert's counsel will be ordered to show cause why he should not be sanctioned for these rule violations.

[4]   Miranda v. Arizona, 384 U.S. 436 (1966).

[5]   Brady v. Maryland, 373 U.S. 83 (1963).

[6]   United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

[7]   Giglio v. United States, 405 U.S. 150 (1972).

## III. DISCUSSION

### A. The District Court Erred in Denying Lambert's Motion To Suppress Evidence of Refusal.

In State v. Wilson, 141 Hawai'i 459, 413 P.3d 363 (App. 2018) cert. granted, 2018 WL 2949142 (June 13, 2018), we reversed a conviction for refusal to consent to breath or blood BAC testing under HRS § 291E-68 because we found that the defendant could not permissibly be prosecuted under HRS § 291E-68 in the wake of State v. Won, 137 Hawai'i 330, 372 P.3d 1065 (2015). In Wilson, we concluded that

> Unlike Won, Wilson did not consent to a breath test, but rather refused to submit to testing. Thus, this case is factually distinguishable from Won. However, we conclude that the analysis used by the majority in Won to arrive at its determination that Won's consent was invalid controls our decision in this case.
>
> In particular, the Won majority observed that in the absence of a warrant or an exception (besides consent) to the warrant requirement, the choice presented to Won by the implied consent form, which required him to surrender either his constitutional right to refuse to be searched or his constitutional right to not be arrested for constitutionally authorized conduct, rendered his consent to search involuntary.
>
> . . . .
>
> Here, the police did not have a warrant to search Wilson, and based on Won, there was no exception to the warrant requirement that would permit the police to compel Wilson to submit to testing. In accordance with the majority's analysis in Won, the State could not subject Wilson to criminal punishment for exercising her constitutional right to refuse to submit to testing.

141 Hawai'i at 463-64, 413 P.3d at 367-68 (emphases added). Therefore, we reverse Lambert's conviction for refusal, and, because the District Court's denial of Lambert's Motion to Suppress his refusal to submit to breath testing has no bearing on his conviction under Count 1 for OVUII, we need not address Lambert's first point of error.

### B. The District Court Abused Its Discretion by Refusing to Continue the Trial So that Lambert Could Obtain Transcripts of the Pretrial Motions Hearing.

Lambert contends that he was denied his right to a fair trial when the District Court commenced with the trial immediately after the pretrial hearing on the motions because it

4

precluded Lambert from obtaining transcripts of the hearing with which he could potentially impeach the officers at trial. "The plain language of [Hawai'i Rules of Penal Procedure (HRPP)] Rule 12(e) only requires that a pretrial motion be determined prior to trial, it does not require that pretrial motions be determined on a different day than the trial."[8] State v. Seidl, 139 Hawai'i 267, 388 P.3d 55, 2016 WL 6879554 at ***2 (App. Nov. 22, 2016) (SDO).

However, Lambert was entitled to transcripts of prior proceedings in his case, State v. Mundon, 121 Hawai'i 339, 357, 219 P.3d 1126, 1144 (2009) (there is "innate value of transcripts for trial preparation and impeachment purposes and [] a defendant need not show a need for the transcripts 'tailored to the facts of a particular case'"), and he in so many words,[9] asked to continue the trial for that purpose. Therefore, the District Court abused its discretion when it denied Lambert a continuance of trial to obtain the transcript of his pretrial motion hearing. State v. Williander, 142 Hawai'i 155,162, 415 P.3d 897, 904 (2018) (grant/denial of continuance reviewed for abuse of discretion).

C. **The District Court Did Not Err When It Denied Lambert's Motions to Dismiss Because the Definition of Alcohol Under HRS § 291-E Includes Alcohol Produced Through Fermentation.**

Lambert filed two motions to dismiss and one motion for a bill of particulars that all alleged,[10] in essence, that because the statutory definition of "alcohol" under HRS § 291E-

---

[8] The appellant in Seidl also contended that the same-day trial deprived her of the right to obtain transcripts; however, this court did not address the issue because the case was remanded for a new trial. 2016 WL 6879554, at ***2 n.3.

[9] Lambert's counsel objected to commencing trial the same day, stating, "I don't think it would be appropriate to start trial this afternoon" and "so I believe that we cannot proceed without those transcripts."

[10] Again, because his points of error do not specify, it is unclear from the Opening Brief which of the two motions to dismiss Lambert contends should not have been denied, or both.

1[11] does not include alcoholic beverages created by way of fermentation, his charge for OVUII that did not so state denied Lambert notice that he could be prosecuted on the basis of intoxication from fermented drinks. The District Court properly denied all three motions relating to the statutory definition of alcohol on the basis of Turping, which held that an OVUII charge is not deficient for failing to allege the statutory definition of "alcohol." Id. at 335-36, 361 P.3d at 1238-39; see Seidl, 2016 WL 6879554, at ***3.

Lambert's argument is one of law, contending that the plain language of HRS § 291E-1 precludes any alcoholic beverages that are not the product of distillation, which, under State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009), would require such non-distilled alcohol to be specified in the charge. Nevertheless, as the Hawai'i Supreme Court recently held, the meaning of "alcohol" under the same version of HRS § 291E-1 as Lambert was prosecuted "is not limited to alcohol derived from distillation" but, rather, includes beer, wine, and other fermented liquors containing ethanol, and the definition of alcohol comports with its commonly-understood meaning. State v. Tsujimura, 140 Hawai'i 299, 306, 400 P.3d 500, 507 (2017).[12] Therefore, Lambert was not deprived of notice that he could be prosecuted for OVUII from intoxication caused by alcoholic drinks produced by fermentation.

---

[11] The relevant part of HRS § 291E-1 (2007) in effect at the time of Lambert's offense provided,

> "Alcohol" means the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof, and includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol, but not denatured or other alcohol that is considered not potable under the customs laws of the United States.

[12] The year prior to the Tsujimura decision, the Legislature simplified the definition of alcohol to "ethanol or any substance containing ethanol." 2016 Haw. Sess. Laws Act 231, § 59, at 766.

6

### D.-G. The District Court Failed to State Its Essential Findings In Support of Its Denial of Lambert's Discovery-Related Motions.

Lambert's points of error D, E, F, and G concern discovery issues.[13] In points of error D and E, Lambert asserts that it was unconstitutional for the State to require that he pay to inspect--rather than accepting prosecutor-produced photocopies of--discovery materials that the State has an obligation to disclose under Brady and HRPP Rule 16,[14] and 16.1[15].

_____

[13] Lambert contends that the following motions, relating to discovery and filed December 29, 2014, were wrongly denied: Motion to Dismiss for Brady Violation re Unconstitutional Condition; Motion to Compel Prosecution to Allow Exercise of HRPP Rules Including Inspection of General and Specific Brady Materials Without Cost Pursuant to HRPP Rules 16(b)(1)(i), (ii), (iii), (iv), (v), (vii), 16(b)(2), 16(d), 16(e)(1), (2), (3), 16.1, Rules of the District Courts of the State of Hawaii, Rule 33(a); Motion to Compel Specific Brady Material-Background Checks; and Motion to Compel Toyomura Records.

[14] HRPP Rule 16(b) provides, in relevant part,

**(b) Disclosure by the Prosecution.**

(1) DISCLOSURE OF MATTERS WITHIN PROSECUTION'S POSSESSION. The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:

(i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses in the presentation of the evidence in chief, together with any relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;

(ii) any written or recorded statements and the substance of any oral statements made by the defendant, or made by a co-defendant if intended to be used in a joint trial, together with the names and last known addresses of persons who witnessed the making of such statements;

(iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;

(iv) any books, papers, documents, photographs, or tangible objects which the prosecutor intends to introduce, or which were obtained from or which belong to the defendant, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel;

(continued...)

We have held that, "while it may be permissible for the State to charge a defendant for copying costs where the defendant requests copies of materials subject to disclosure, the State cannot condition the disclosure of <u>Brady</u> material or discovery on the payment for copies that the defendant only seeks to view." <u>Seidl</u>, 2016 WL 6879554, at ***3 (brackets and internal quotation marks omitted) (quoting <u>State v. Yoshimoto</u>, 137 Hawai'i 206, 366 P.3d 1085, No. CAAP-14-0000896, 2016 WL 383169, at *2 (App. Jan. 29, 2016) (SDO)); <u>see also</u> <u>State v. Woods</u>, 138 Hawai'i 138, 377 P.3d 1056, No. CAAP-14-0001278, 2016 WL 3128747 (App. June 2, 2016 (SDO); <u>State v. Rollison</u>, 136 Hawai'i 374, 362 P.3d 807,

---

[14](...continued)

       (v) a copy of any Hawai'i criminal record of the defendant and, if so ordered by the court, a copy of any criminal record of the defendant outside the State of Hawai'i;

       (vi) whether there has been any electronic surveillance (including wiretapping) of conversations to which the defendant was a party or occurring on the defendant's premises; and

       (vii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the defendant's punishment therefor.

       (2) DISCLOSURE OF MATTERS NOT WITHIN PROSECUTION'S POSSESSION. Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the <u>prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel</u>; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

(Emphasis added.)

[15]     HRPP Rule 16.1, "Discovery Procedures for Non-Felony Criminal and Criminal Traffic Cases," provides,

       **(a) Applicability.** This rule shall apply to non-felony criminal and criminal traffic cases.

       **(b) Request for Discovery.** If discovery is sought of materials that would be discoverable in felony cases pursuant to these rules, a request for discovery shall be made to the opposing side in writing and shall list the specific materials being sought. Unless otherwise ordered, the request shall not be filed with the court.

       **(c) Motion to Compel Discovery.** A party may file a motion to compel discovery if a timely request for discovery was made, unless otherwise ordered by the court.

No. CAAP-14-0000765, 2015 WL 7575334 (App. Nov. 25, 2015) (SDO). The record does not indicate the specific materials Lambert sought, or those materials the State proffered copies for a fee; thus, there is no basis on which to determine whether the requested materials qualify as Brady or otherwise discoverable materials. Consequently, on remand, the District Court must determine--on the record--whether Lambert is entitled to disclosure of the subject materials under Brady and the extent to which Lambert is otherwise entitled to discovery under HRPP Rules 16(d) and 16.1. See Seidl, 2016 WL 6879554, at ***4; Yoshimoto, 2016 WL 383169, *2; Rollison, 2015 WL 7575334, *2.

In points of error F and G, Lambert contends that the District Court erred in denying his motions to compel the State to provide Henthorn and Giglio materials regarding the police officers' disciplinary and training records. "The scope of discovery is reviewed for an abuse of discretion" State v. Estrada, 69 Haw. 204, 216, 738 P.2d 812, 821 (1987) (citation omitted). "A trial court abuses its discretion when it 'clearly exceed[s] the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" State v. Garcia, 135 Hawai'i 361, 368, 351 P.3d 588, 595 (2015) (quoting State v. Merino, 81 Hawai'i 198, 211, 915 P.2d 672, 685 (1996)).

Here, the record does not reflect the State's response to Lambert's motion to compel Henthorn and Giglio materials, and we see nothing in the record indicating that the District Court ruled on this motion. Consequently, we remand for the District Court's ruling on Lambert's motion. See Seidl, 2016 WL 6879554, at ***4; Yoshimoto, 2016 WL 383169 at *2; Rollison, 2015 WL 7575334 at *2.

**H.     The Refreshing of the Officer's Memory Was Proper.**

Lambert contends that one officer's testimony regarding the SFSTs was improperly admitted because the prosecution failed to lay a proper foundation to refresh the officer's memory. As previously noted, Lambert's point of error does not provide a citation to the record for where the alleged error occurred. However, in his argument he references the refreshing of memory

9

during the pretrial hearing on the motions to suppress for lack of reasonable suspicion and probable cause.

A witness's memory may be refreshed by reviewing a writing, Hawaii Rules of Evidence (HRE) Rule 612,[16] but the subsequent testimony is admissible only upon a showing that the witness's memory was actually refreshed through the laying of proper foundation.  State v. Wakamoto, 143 Hawai'i 443, 451, 431 P.3d 816, 824 (2018).

Here, the contested refreshing of the officer's memory occurred during a pretrial hearing on a motion to suppress, and the testimony was not incorporated into the trial.  "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court[.]  In making its determination[,] the court is not bound by the rules of evidence except those with respect to privileges."  HRE Rule 104(a) (emphasis added); see also, United States v. Ocampo, 650 F.2d 421, 427 (2nd Cir. 1981) ("a court, in conducting a hearing to determine the legality of a warrantless search or seizure, is not bound by strict rules of evidence") (citation omitted).

In any event, a proper foundation was laid.  Initially, we note Lambert cites no case authority for his contention that there are eleven specific questions the attorney must ask before the officer's testimony is admissible.[17]  Instead, it appears

---

[16]     HRE Rule 612 provides, in part,

If a witness uses a writing to refresh the witness' memory for the purpose of testifying, either:

    (1)   While testifying, or

    (2)   Before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness[.]

[17]     Lambert contends that the following questions must be asked for proper foundation:

First, ask the witness if he had personal knowledge of the events at one time.  Next, ask if he recorded that information in a document.  Third, you must establish that the events were still fresh in his mind when he made the
(continued...)

that Lambert is confusing the foundational requirements of refreshing a memory with those for admitting an exhibit under the past recollection recorded exception to the hearsay rule.  See HRE Rule 802.1(4).  Refreshing of a witness's memory requires less in terms of foundation than past recollection recorded.

> When used to refresh the witness's present recollection, a writing is solely employed to jog the memory of the testifying witness.  1 J. Strong, McCormick on Evidence § 9, at 29 (4th ed.1992).  Accordingly, when a writing is used to refresh a witness's recollection, the witness should testify from "a memory thus revived," resulting in testimony from present recollection, not a memory of the writing itself. Id.  "A witness's recollection must be revived after he or she consults the particular writing or object offered as a stimulus so that . . . the resulting testimony relates to a present recollection."  3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 612 [01], at 612-16 (1995).

State v. Ferrer, 95 Hawai'i 409, 432-33, 23 P.3d 744, 767-68 (App. 2001).  In refreshing of memory, the witness is instructed to read the writing to him- or herself, and then is asked if his or her memory is refreshed prior to continuing the testimony. Wakamoto, 143 Hawai'i at 452, 431 P.3d at 825.  In Dibenedetto, we held that an officer's memory had not been properly refreshed because he had no memory of the circumstances surrounding the events until he reviewed his own writing, and he even testified that his testimony was based only on the report and not his memory.  State v. Dibenedetto, 80 Hawai'i 138, 141, 906 P.2d 624, 627 (App. 1995).

Unlike in Dibenedetto, the officer here had testified in detail what he remembered of Lambert's look, demeanor, and performance in the first SFST.  The officer remembered the manner in which he had told Lambert to stand while being instructed on the second test, but he could not remember whether Lambert maintained the position throughout this instruction period.

---

[17](...continued) document.  Fourth, ask the witness if he recognizes the document.  Ascertain how the witness can recognize the document.  Have the witness identify the document.  Get the witness to explain why he was able to remember the information at the time the document was created and the steps he took to make sure that information was accurately recorded in his document.  Have the witness examine the document in an effort to refresh his memory.  Ascertain that the witness' [sic] memory has been refreshed.  Ask if the witness can now remember the answer to the question that was originally asked and if he says yes, then repeat the question and obtain the answer.

Once the officer reviewed his test report, he affirmed that he recognized the report because it was in his own handwriting and bearing his own signature, and he answered affirmatively that his memory had been refreshed. The officer then testified in detail as to Lambert's other two tests.

In other words, the officer remembered details concerning the SFSTs, which were the basis for his belief that Lambert was not sober, and the only part he needed to refresh his memory was the time period <u>between</u> two of the tests. Thus, "given that prior to having his recollection refreshed, [the officer] remembered significant details about the incident, such as what he observed when he arrived on the scene and talked to [the defendant], it is reasonable to infer that the SFST report merely jogged his memory." State v. Nakamitsu, 138 Hawai'i 51, 375 P.3d 1289, No. CAAP-14-0001151, 2016 WL 381475, at *12 (App. Jan. 29, 2016); see State v. Espiritu, 117 Hawai'i 127, 137, 176 P.3d 885, 895 (2008) (holding that the witness's memory was properly refreshed when he "accurately recalled the gist or the general nature of each text message prior to viewing the police report" for the exact wording). Consequently, the officer's memory was properly refreshed with adequate foundation.

## IV. CONCLUSION

The May 15, 2015 Judgment is reversed in part and vacated in part. The conviction and sentence in Count 2 is reversed. The conviction and sentence as to Count 1 is vacated and the count is remanded for the District Court to rule on Lambert's December 29, 2014 (1) Motion to Dismiss for Brady Violation re Unconstitutional Condition; (2) Motion to Compel Prosecution to Allow Exercise of HRPP Rules Including Inspection of General and Specific Brady Materials Without Cost Pursuant to HRPP Rules 16(b)(1)(i), (ii), (iii), (iv), (v), (vii), 16(b)(2), 16(d), 16(e)(1), (2), (3), 16.1, Rules of the District Courts of the State of Hawaii, Rule 33(a); (3) Motion to Compel Specific Brady Material-Background Checks; and (4) Motion to Compel

Toyomura Records and for further proceedings consistent with this opinion.

DATED:    Honolulu, Hawai'i, May 29, 2019.

On the briefs:

Kevin O'Grady,
for Defendant-Appellant.

Chief Judge

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Associate Judge

Associate Judge